Yes. Good morning, Your Honors. May it please the Court. I represent Appellant Capital Specialty Insurance Company, and I'd like to reserve two minutes for rebuttal. Today I want to address three main issues in dispute. The first is Steadfast's position that United had no damages to assign to Cap Specialty. The second is the interpretation of the Steadfast policy and its treatment of related claims. Finally, with respect to the Milan claim, I'll discuss the reasons why the repair did not violate the policy. First, Steadfast argues, and the District Court agreed, that Steadfast can escape liability for its wrongful refusal to provide coverage for the Military Road Claim based on the fortuitous circumstance that United assigned its claims to Cap Specialty. The District Court ruled, in essence, that a party who pays a loss, owed by another, in exchange for an assignment against the bad actor, is then prohibited from actually pursuing the assigned claim against the bad actor. This runs afoul of well-established principles of subrogation and assignment. While this is not a subrogation claim, a subrogation is an assignment by operation of law, so its principles are operative here. What matters not is that United suffered actual loss, but that United would have suffered a loss had LP and its insurer, Cap Specialty, not paid the loss. The California Appellate Court decision in Searles Valley Mineral Operations v. Parsons illustrates this point. It holds that when two co-obligors owe the same debt to a party, one can pay it and then pursue the non-paying co-obligor for the debt pursuant to an assignment from the injured party. The same is true here. Steadfast argues that Searles is distinguishable because the roles of the party in that case do not perfectly align with the roles of the parties here. The difference between this case and Searles is that Steadfast and LP, and by extension LP's insurer, Cap Specialty, are not necessarily co-obligors. They're what I would really call alternative obligors to United, meaning that if Cap Specialty and LP's interpretation of the policy is correct, then LP didn't commit malpractice at all and United and Steadfast breached the contract by refusing to provide coverage for the claim. The issue is that the parties disagree about the insurance policy interpretation, so we don't know who's obligated to pay the claim. And even now, eight years after Steadfast denied the Military Road claim, we still don't have a definitive answer on policy interpretation. The parties dispute left United to bear the entire loss because both LP and Steadfast denied liability. LP and its insurer, Cap Specialty, decided to settle with United, but LP did not admit liability, and that settlement was contingent on Cap Specialty's ability to pursue Steadfast for a loss that LP and Cap Specialty believe Steadfast should have paid. This is the purpose of an assignment. Suppose that we agree with you on that. There are alternative arguments on the merits of both claims, so maybe it would be helpful to address those. Sure, on the interpretation of the policy? Correct. Sure. So that's the second important issue here, really, that comes down to the interpretation of the related claims language in the policy. So the Steadfast policy covers claims made and reported during the policy period. That coverage grant should be read in conjunction with the policy language stating two or more related claims shall be treated as a single claim and are subject to the same limits of liability. A plain reading of this language would lead an insurer to believe that reporting one related claim during the policy period satisfies the reporting requirement for all related claims because they're all considered a single claim and they all fall within the limits of one policy. But why would you think that when that language appears in a section that's about the liability limits for each period? It's not about the time limits for reporting. That's addressed separately. So it seems a curious way to give the policyholder an extended time limit to sort of stick it in this section, which isn't about the time limits. Yeah, so this was addressed by the court in Worthington Federal Bank versus Everest National Insurance Company. It's 110 Federal Supplement 3rd, 1211. It is a northern district of Alabama case, but it uses the same maxims of insurance policy interpretation that Nevada law ascribes to. And in that case, the facts were very similar. You had two claims, one within one policy, the next claim within another policy. And the first insurer denied the second claim, saying it was made after my policy, I'm not going to provide coverage. The policy at issue in that case had language very similar to the policy at issue here. Language was also in the section of the policy regarding retentions and limits. And the court in Worthington said that you cannot read that language narrowly to only apply to the calculation of limits and retentions when that's not what the language says. Well, can I ask you this? What you're arguing is that the notice with respect to the earlier claims was good enough for this one. But I thought that those earlier claims had been settled and released. So how can we be sure if they're related and the same? Yes, the earlier claims were settled and released. I don't think that steadfast disputes the fact that the military road claim, the claim that we're here today, relates to the Virginia Street claim because they both involve the use of a defective roof design. Well, but you're arguing that the notice with respect to the Virginia Street was good enough for the military road, right? Right. So it's all the same. Well, if all the Virginia claims have been settled, then how do we still have the military road claim if it's all the same thing? Right. So the policy deems two or more related claims as a single claim. So the fact that a portion of the claim is settled doesn't bear necessarily on coverage for the remaining portions. But it said it was all claims were settled and released. Didn't the settlement? It didn't accept the military road. Yes. So the settlement related only to the Virginia Street claim. It didn't have anything to do with the military claim at all other than some language that steadfast, I would say, coerced, united. Well, the settlement didn't have anything to do with the military road. Why would the notice have to do with the military road? That's my question. We're looking at an insurance policy interpretation. We're looking at the four corners of the policy to determine what the insurance expectations were with regard to coverage for a related claim. A settlement that's outside the context of that policy, I would say that that doesn't affect the insurance policy interpretation. So why do you think there was just one occurrence? I mean, in traditional insurance analysis, you've got two separate – it looks to me like you have two separate occurrences. You're arguing no. So this is not an occurrence policy. Right, it's a claims made, but I mean – Right. This is a claims made policy. So if you look at the policy language itself, and this language, it is in the claim in the retention and limits section. It talks about related claims, and it says, all such claims, whenever made, shall be considered first made when the earliest claim was first reported. Right. I guess what I'm questioning is how they're related. Just because the same theory of liability applies to two separate episodes doesn't necessarily make them related. So can you give me a case or citation or argument on that? I know they seem to have conceded that point, but it's curious to me. Sure. So it's actually within the policy language itself, where it says two or more claims arising out of the same interrelated, associated, repeated, or continuous negligent act, error, or omission shall be treated as a single claim. It's in the policy itself. So these claims all involve a single error, the use of a defective roof design. And I don't think that – Well, it's the same error. Right. But it may have been – it would happen two times. So why are they the same claim? They're the same claim because the policy treats them as the same claim. I mean, we're looking at the policy language, and it says two or more claims. So we have two or more claims. We have the Virginia Street claims. We have the Military Road claims. Two or more claims that arise out of the same interrelated, associated, or repeated negligent act are treated as a single claim. The policy itself deems them as a single claim. Right. But I think that – at least my question is, is it the same negligent act? Because it's not – they're two separate properties. There's not a continuous – it's not a situation where this is a continuing violation, say if somebody's paving a street or something and you've got damage all the way down. Why is this the same negligent act? Well, again, I don't think Steadfast has disputed this. And even if it were, I think that's an issue of fact that needs to be taken to a jury. You know, if these – whether or not these claims are related, whether they constitute a single interrelated negligent act error or omission, I don't think that's something that can be determined on summary judgment if it were disputed. I also want to point out – But your theory on interrelatedness is simply that they made the same mistake, right? Right. Okay. Because that's what the policy says. Well, it doesn't quite say that, but go ahead. I do – I don't want the court to lose sight of the fact that United actually did put Steadfast on notice of the Military Road Claim during the Steadfast policy. Steadfast – I'm sorry, United notified Steadfast that it had used the same defective roof design on two other buildings, but that at the time, which was during the policy period, those buildings were not having issues. So Steadfast knew that this defective design was out there. There were other buildings that used this defective design. But at that time, during the policy, there were no issues with those buildings. But there's no question that the broker didn't give the proper notice. Well, the question is whether or not a claim was being made at all during the policy. I mean, the mold was found three days before the policy expired. You know, United was watching this building because they knew this was an issue. They found the mold. They told their broker, let our carriers know that mold was found at the building, not let our brokers know that a claim has been made. So there is a factual issue about – Your time is just about – your time is just about expired. Do you want to address the Milan property briefly? Yes, I'll address that briefly. As to the Milan property, I think Steadfast agrees that the Milan paperwork costs are not claim expenses, but they argue that the policy prohibits the insured from incurring any costs or charges, even if they don't relate to claim expenses. I think that's an absurd interpretation. The insured would be breaching the policy any time it incurs any costs or charges. It has to be read as relating to claim expenses. But it does say – so you want us to read it as no costs or charges related to claim expenses? But in fact it says costs, charges, or related claim expenses.  So the burden is on Steadfast to write a policy that is clear. Steadfast should have defined costs or charges, which are not defined in the policy. But there's no other way to interpret that. If it's just wide open, any costs or charges, whether or not they relate to a claim or not, to say that those can't be incurred without breaching the policy, that's a ridiculous interpretation. Why is it ridiculous? I mean, presumably this would only come up if the costs or charges are things for which you are then seeking coverage. Right. So it's not costs or charges for stuff that's totally unrelated, because then why are you seeking coverage? So why would it be absurd to read it that way? Well, even the fact that you're saying that, you know, of course it has to be costs or charges related to claims. The policy doesn't say that. I mean, Steadfast should have defined costs or charges. The way that the policy reads, I mean, that's broad, and I don't see a way you could read that other than relating to claim expenses or relating to a claim. Okay. I think we've used up all your time. We'll give you two minutes for rebuttal. Thank you. Ms. Hepler. Good morning, Your Honors. Laurie Hepler for Appellee Steadfast, which the record often refers to by its parent company named Zurich. The policy language defeats this appeal, and I want to focus the Court on Section 4D1, because counsel repeatedly quoted the related claim language without finishing the sentence in which it appears, which is vital. Two or more claims arising out of the same interrelated, et cetera, et cetera, error or omission or a series of related negligent acts, et cetera, shall be treated as a single claim and shall be subject to the same limit of liability. They are treated as related for purposes of limits. There's not even a comma before the and. These phrases are not independent. They are treated, if sufficiently related, as one claim for purposes of both a single limit of liability and, to the insured's benefit, a single self-insured retention. That's the only function of the related claims phrasing in this policy, and it's irrelevant here. Counsel needs to pluck a sentence about reporting from the next paragraph, 4D2, which doesn't apply to this case at all. 4D2 concerns only situations involving two or more policy periods, and there was only one here. United was insured with Steadfast for only one year, so there is literally nothing in this policy on which appellant can rely to pull the late notice for Military Road back from the post-reporting period into the policy period as required. That all such claims shall be considered first made on the date on which the earliest claim is reported concerns only situations involving two or more policy periods with Steadfast. I want to make a sort of put a fine point on this by assuring the Court, neither Worthington, that counsel cited this morning, nor any other case cited in their brief contains policy language analogous to what I just read. Every single one of them, and I read all the policy language in every single one, contains a much broader relation clause for reporting purposes. I'll just discuss Worthington's briefly since that happens to be the case that counsel cited today. The sentence there said, each such single claim shall be deemed to be first made on the date the earliest of such claims was first made, regardless of whether such date is before or during the policy period. The end. That's a very broad sentence, and it's very similar to the one in Blackburn. It's very similar to the one in West Trek. It's very similar. In fact, some of the cases they cite go even further rather than just that global declaration about related claims. They go further and say, and the reporting, the piece from R4D2 is pulled right together with the related claim language. So they're either generally declarative about related claims for all purposes or they affirmatively say that claims shall be related for the purpose of reporting. This policy does neither. So the Military Road claim was reported fatally late, and it was not a breach by Steadfast to deny it. I don't know if it's necessary to discuss the no damages piece. I'm happy to address why their argument on that is wrong and why this case isn't even close to a subrogation or indemnity situation, as counsel argued. The piece about late reporting is completely sufficient to affirm. Milan is as straightforward as a denial really can get. They accumulated seven figures in costs and dropped the bill on their insurer later. And the policy language doesn't allow that. Common sense doesn't allow that. If that were how insurance policies work for malpractice or anything else, insurers would have incentives to just keep quiet about anything, about actual losses, about circumstances that could give rise to losses, fix them. I take it they did that. It was sort of mysterious to me. It's strange. I take it they did that because they expected that they would be reimbursed by the owner or something. Well, they kind of thought they would. The record is devoid of any evidence of any written agreement with the owner about that, and it is full of evidence that we provided showing that not only did they have no agreement with the owner to pay those costs, but they actually were being threatened with liability by the owner at the time. It was very clear that this has a strong chance of becoming a claim, although, frankly, that doesn't matter either way. The language is crystal clear that no cost charges or related claim expenses shall be incurred without our advance consent. So it's just not even a close call on Milan as far as I can tell. I don't know that there was anything else in counsel's presentation that maybe the Court may have questions about. Did you concede that they were related claims? Your Honor, only for the narrow purpose of limits and SIRs. There is a file note suggesting that Steadfast believed that Military Road may have arisen out of similar roof design to Virginia, the Virginia Street properties. But to be clear, we paid $2 million on the Virginia Street properties during the policy period and resolved and settled all of that with their Asinore United. And then they came along after the reporting period and told us about this other claim, and there was absolutely nothing in the policy, no evidence in this record suggesting that Steadfast ever considered them related for reporting period purposes. There is no such language. But you're not contesting that now. Sorry? You're not contesting that now. Contesting what now? Whether they were related claims or not. Oh, we absolutely contest that for purposes of reporting, which is the only purpose that matters here, Your Honor. Yeah. They were related in the sense that it was the same defect in all of them. Well, frankly, we only have very light evidence on that here. There is a very generic comment in the file that I think counsel is referring to. It doesn't even name Military Road. It just says to other roofs which have no claims or issues attached or have the same design. That's all the evidence we have. What I gather of your position then is that the limits of liability, there is only one limit of liability on the two properties. Correct. Well, we paid one limit of liability. In fact, the evidence, the same file note they're referring to, is there to document the fact that we only charged United one SIR for the two was the same for the two. Had they brought the Military Road claim on time, the record is dead clear that we would have covered it. We didn't because the broker didn't report it on time. No, I understand that. But if they had timely filed a claim, would it have been your position that there was a single liability limit for the two? Two occurrences? Your Honor, I would have to say I can't definitively answer that, but more likely than not, I can't definitively answer it because we don't have all the circumstances of a claim here. We never got one. If you don't need to speculate, I was just asking. Okay. I appreciate that very much. Was the policy limit reached in the Virginia settlement? I'm just curious. That's a good question. I don't think so. But I don't know the answer to that. Okay. It is, yeah, the policies declaration page would show the limit. I don't think so. Does the Court have any other further questions for me? Thank you so much. Thank you. Rebuttal. Thank you. The point Steadfast raises about conceding that this is a related claim for their benefit only to put all of the claims within one policy limit, and the policy limits were not eroded by the Virginia Street claims, that that was about a $1.9 million settlement out of $5 million policy limits. But you have to look at the language of the policy, and it goes both ways. If a claim is related, then it's a single claim, and reporting of one or the making of one during the policy period satisfies the making and reporting for all. It can't really be a one-way street. Council refers to Section 42, and that provision states all such claims, whenever made, shall be considered first made when the earliest claim was first reported. Council said that that provision doesn't apply to this case because we don't have claims made in two or more policy periods. But we do, or at least there's a disputed fact, as to when the Military Road claim was made. United's position is that it was made after the Steadfast policy expires. Council points to the term policy periods in that phrase. It's used as a defined term, policy periods. But the use of that defined term, in and of itself, is ambiguous because the policy only defines policy period, singular, as the one-year policy period. So that phrase could never be read as applying only to the Steadfast policy because there's only one policy period. And that clause deals with claims made in two or more policy periods. That's all my time. Thank you. Thank you very much. We thank both Council for their arguments, and the case is submitted.
judges: SCHROEDER, THOMAS, MILLER